# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### MARTINSBURG

JENNIFER HALL,

      **Plaintiff,**

v.                             **Civil Action No.: 2:09CV122**
                                          **JUDGE MAXWELL**

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

On October 14, 2009, Plaintiff, Jennifer Hall ("Plaintiff"), by counsel Travis M. Miller, Esq. filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) and 1383(c)(3). On December 11, 2009, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On January 8, 2010 and February 5, 2010, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [10] [12].

Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

# I. PROCEDURAL HISTORY

On or about October 3, 2006, Plaintiff filed an application for disability insurance benefits, hereinafter "DIB" and application for Supplemental Security Income hereinafter "SSI" alleging disability as of May 23, 2005, due to a bipolar disorder. (T. 8, 136-144, 162). The state agency denied Plaintiff's applications initially on April 11, 2007 and on reconsideration on August 16, 2007 (T. 8, 84-104 ).

At Plaintiff's request, an administrative law judge (ALJ) held a hearing on October 14, 2008, when Plaintiff, who was represented by an attorney, testified, along with a vocational expert. (T. 8, 22-83).

The ALJ issued a decision on April 14, 2009, finding that the Plaintiff had the following impairments, which when combined are a severe impairment: bipolar disorder and depression; and anxiety disorder (T. 10). However the ALJ further found that none of these impairments or combinations thereof met the criteria for the listed impairments in 20C.F.R Part 404, Subpart P, Appendix 1 (20C.F.R. 404.1525, 404.1526, 416.925 and 416.926). (T. 12). The ALJ further found that although Plaintiff could no longer perform any of her past relevant work, she could nevertheless perform a full range of work at ALL EXERTIONAL levels but with the following NON-EXERTIONAL LIMITATIONS: "..she can do no more than low stress work, with no high production rate jobs or assembly-line work, or high sales quotas, such as telemarketing sales; she can do no work that requires more than minimal interaction with the public, or more than occasional contact with co-workers and supervisors; she can do only work that is done in a consistent manner on a day to day basis"(T. 13, ). Relying upon vocational expert testimony, the ALJ found that other work existed in the national economy that Plaintiff could perform. (T. 15, ). In so concluding, the

ALJ determined that Plaintiff was not "disabled" within the meaning of the Act and therefore not entitled to DIB or SSI. (T. 16).

Thereafter, Plaintiff requested Appeals Council review the Decision and on August 28, 2009, the request for review was denied. (T. 1-4;21). At that point, he ALJ's decision became the final decision for judicial review pursuant to 42 U.S.C.§405(g) and 1383(c)3 (T. 5-7). On October 14, 2009, the Plaintiff filed a complaint in this Court to obtain judicial review of the final decision of the Commissioner. Presently before the Court are the parties' respective motions for summary judgment [10] and [12].

## II. STATEMENT OF FACTS

Plaintiff was twenty nine (29) years old at the time of the ALJ's decision. (T. 16, 36, 170). The Plaintiff is an only child and was living with her parents at the time of the Administrative hearing. (T. 36). Plaintiff has a high school diploma and attended Fairmont State College for three and one half years pursuing a degree in Elementary Education. (T. 40-42). Plaintiff had only a few courses and her student teaching requirement left to complete her degree. (T. 40-42). Plaintiff indicated that she made mostly A's and a few B's in school and that her overall GPA was a 3.8. (T.72). Plaintiff has worked as a waitress, cashier, and daycare provider since she graduated from high school. (T. 43-47). Plaintiff suffers from no physical problems that would effect her ability to work. . (T. 71)

Plaintiff asserted that she had been unable to work since May 23, 2005 (T. 136, 141), because of a bipolar disorder (T. 162). On that date, Plaintiff was committed for psychiatric evaluation and treatment after she overdosed on Xanax (T 227-34). Upon her admission, Plaintiff complained of a history of depression (T. 227, 229), but indicated that she did not really want to kill

herself but just wanted to feel better. (T. 229). Ms. Hall was involuntarily committed to William R. Sharpe Jr. psychiatric hospital from May 23, 2005 through June 1, 2005 (T. 227-234). Ms. Hall was twenty-five years old at the time and had a long history of depression. (T. 227). Prior to her admission, Ms. Hall had stopped taking her psychotropic medication because her physician had changed it. (T. 277). While at Sharpe, the Plaintiff was put back on her normal medication, received psychotherapy, and had a "one-to-one MICA" about marijuana abuse. (T. 228). The Sharpe medical records indicate that prior to her admission, Plaintiff was employed and going to school; that she appeared to have a supportive family; that she was relatively healthy physically and that her depression had been managed as an outpatient up to that point. (T. 233). Upon discharge, Ms. Hall was diagnosed with Major Depression and Marijuana Abuse. (T. 227). It was recommended that she stay on her medications (T. 228).

On June 17, 2005 and March 20, 2006, Plaintiff completed *Patient Self-Report Intake Assessment* questionnaires. Plaintiff indicated that she had no difficulty performing activities that she normally performed for herself (T. 326, 329) She denied having suicidal ideation, and indicated that she was doing "great" and had a positive attitude (T. 330). On March 20, 2006, she reported that she was busy with school, keeping active, had a positive attitude and was feeling good. (T. 327).

After her admission to Sharpe, Plaintiff received follow up care with David Peasak, N.P. until July 30, 2007. (T. 269-272).

On September 8, 2006, E. Samuel Guy, M.D., a psychiatrist, conducted an intake psychiatric evaluation of Plaintiff (T. 298-300). Plaintiff reported to Dr. Guy that she takes marijuana on an occasional basis to help her keep from having a breakdown. (T. 298). Dr. Guy's mental status exam reports that despite Plaintiff's lack of sleep she doesn't physically feel tired and that she denies

hallucinations, or delusions or paranoia. (T. 299). Further, Dr. Guy reports that Plaintiff is appropriately dressed and groomed and that her speech is "goal directed" and "reality based". (T. 299). Dr. Guy assesses the Plaintiff's intelligence to be average. (T. 299). Dr. Guy's impressions are that the Plaintiff suffers from bipolar disorder and marijuana abuse. (T. 299). In addition, the Dr. Guy indicates that Plaintiff is stressed over school and that her grandmother was just diagnosed with cancer. (T. 299). Dr. Guys's recommendations were that the Plaintiff "...drop out of school for now" and recommended that she apply for disability. (T. 299).

On November 13, 2006, Liza Schaffner, M.D., a psychiatrist, completed a *Routine Abstract Form Mental* questionnaire (T. 294-97). Dr. Schaffner noted that she had seen the Plaintiff for medication management between May 2005 and November 2006. Clinically, Plaintiff was oriented, and she had no delusions, hallucinations, or suicidal ideation (T. 295). Her speech, judgement, insight, thought content, and immediate and recent memory were normal (T. 295-96). Her social functioning, task persistence, and concentration were mildly deficient (T. 296). Her GAF score was 50 (T. 297). Dr. Schaffner felt Plaintiff was unable to participate in sustained employment but would benefit from a regular routine (T. 297).

Three days later on November 16, 2006, Cheryl Cornwell, LPC, conducted a review assessment of Plaintiff's condition. Plaintiff claimed that her mood and functioning had deteriorated significantly in recent months, and she believed this was related to a change in her medication therapy. Plaintiff indicated that she did not want to teach when she graduated, but she was afraid that changing her career plans would put her more in debt and she believed her boyfriend would not marry her unless she graduated and got a job. (T. 292).

On December 1, 2006, Ms. Cornwell completed a *WV Care Connection Form* for Plaintiff

(T. 286-87).  Ms. Cornwell reported Plaintiff had no history of a functional deficit in school, and she was independent in her daily living and maintenance of relationships (T. 286).  Plaintiff had no dysfunction in Domains I, II, and V, and a moderate dysfunction in Domains III and IV of the *WV Functional Assessment*.

On January 4, 2007, Plaintiff completed a *Patient Self-Reporting Intake Assessment* questionnaire.  Plaintiff reported that she had no difficulty performing activities that she normally performed for herself. (T. 320).

On January 29, 2007, Joseph A. Shaver, Ph.D. wrote as follows:

> "I looked over this case again and still feel that she is non-severe. Clmt social functioning, concentration and persistence were rated as mildly impaired.  With regards to daily functioning, Clmt cares of pets, prepares simple meals, does laundry and some cleaning, drives and shops.  With regards to Dr. Guy's recommendation that Clmt drop out of school, I very much disagree with this.  I believed that it is in her best interests to maintain a such a routine that school would provide.  I believe that such an extreme move could possibly exacerbate her depression and perpetuate an approach to problem solving that, in the long run, is very maladaptive."

(T. 245).

On March 13, 2007, Peggy Allman, M.A., a licensed psychologist, evaluated Plaintiff (T. 246-50).  Plaintiff reported her mood was "all right" (T. 248).  In addition, Plaintiff stated that "she would like to return to work, but her physician has advised against working yet nor does he want her to return to college." (T. 247).  Her attitude was positive (T. 249). Plaintiff's interaction with Ms. Allman was normal (T. 248, 250).  Plaintiff could carry a conversation.  She was spontaneous but did not have a sense of humor.  (T. 248). Her speech was relevant and coherent. (T. 248).  She was oriented. (Id.)  There was no evidence of a disturbance of her thought process, thought content, or perception (T. 248).  Her insight and judgement were normal (T. 248-49).  She denied having

suicidal ideation (T. 249). Her recent memory was normal. (T. 249). Her concentration, as measured by serial sevens, was moderately deficient (T. 249). Her persistence and pace were normal (T. 250). Dr. Allman notes that Plaintiff enjoys taking care of her animals and scrapbooking. (T. 250).

On April 10, 2007, Dr. Clark completed a *Psychiatric Review Technique* form and *Mental Residual Functional Capacity Assessment* form (T. 251-267). Both forms indicate that in Dr. Clarks opinion, the Plaintiff does not meet or equal a listing and that although she shows some limits in sustained concentration and social interaction but can perform work-like activities. (T. 267).

On May 21, 2007, Plaintiff saw Ms. Cornwell for an annual update of her chart (T. 273-75). Plaintiff reported that she had dropped out of college since her last update; it was near the time that she would have begun her student teaching (T. 273-74). Plaintiff was looking forward to continuing to help her boyfriend's family with their restaurant (T. 274). That same day, Ms. Cornwell completed a *WV Care Connection Form* (T. 280-281). Plaintiff had no dysfunction in Domains I and II; a moderate dysfunction in Domains III and IV; and a mild dysfunction in Domain V of the *WV Functional Assessment* (T. 280). Her overall GAF had improved to 57 (T. 280).

On July 30, 2007, Dr. Schaffner and Mr. Peasak completed a *Routine Abstract Form Mental* questionnaire (T. 269-72). They rated Plaintiff's GAF between 55 and 60. (T. 272).

On December 3, 2007, Ms. Cornwell conducted a review assessment. (T. 335). Plaintiff reported that she missed her boyfriend, who had broken up with her, and that her church and faith were a significant source of support for her. (T. 335). She further advised that she was "quite bored not working or attending school, and she plans to look into completing her degree." (T. 335). Ms. Cornwell noted that Plaintiff seemed "eager to get back to school." (T. 335). That same day, Ms.

Cornwell completed a *WV Care Connection Form* (T. 340-41). Plaintiff had no dysfunction in Domains I and II; a moderate dysfunction in Domains III and IV; and a mild dysfunction in Domain V of the *WV Functional Assessment* (T.340).

On July 1, 2008, Ms. Cornwell completed a service plan assessment of Plaintiff's condition (T. 332-34). Plaintiff's GAF was 55 (T. 334). Ms. Cornwell reports in her assessment that the Plaintiff "...would like to begin a dog care business someday."

At the administrative hearing on October 14, 2008, James Ganoe, a vocational expert (hereinafter "VE"), testified regarding the vocational aspects of Plaintiff's case. (T. 77-82). Plaintiff, who was born in 1979, was 29 years old at the time of the hearing (T. 36, 136); graduated from high-school and attended college for about three and one half years, pursuing a degree in Elementary Education from Fairmont State (T. 41-42); and worked as a waitress, cashier, and child care worker (T. 163, 169, 209-10). The ALJ asked the VE whether there were unskilled jobs available in the national economy for a hypothetical individual who could tolerate only occasional contact with co-workers, supervisors, and the general public; could not do work that required a high production rate or high sales quotas; and needed a job that could be performed in a consistent manner on a day-to-day basis, where the job was done in the same way from a process standpoint (T. 79). The VE testified that the individual could perform a significant number of light and medium jobs existing in the national economy as , for example, a price marker (319,000 jobs); house cleaner (215,000 jobs); hand packer (750,000 jobs); and warehouse worker (1.7 million jobs) (T. 79-80). The VE explained that the individual could still perform these jobs if she was restricted to work that was 10% or less of work involving contact with the general public (T. 80).

# III. Administrative Law Judge's Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C. F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since May 23, 2005, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq).*

3. The claimant has the following severe impairments: bipolar disorder and depression; and anxiety disorder(20 CFR 404.1520 ( c) and 416.920( c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20C.F.R. Part 404, Subpart P, Appendix 1 (20C.F.R. 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant has the following non-exertional limitations: she can do no more than low stress work, with no high production rate jobs or assembly-line work, or high sales quotas, such as telemarketing sales; she can do no work that requires more than minimal interaction with the public, or more than occasional contact with co-workers and supervisors; she can do only work that is done in a consistent manner on a day-to-day basis; and she cannot do work that requires travel as a part of the job.

6. The claimant is unable to perform her past relevant work.(20C.F.R.404.1565 and 416.965).

7. The claimant was born on September 29, 1979 and was 25 years old, which is defined as a "younger individual" within the meaning of the regulations, on the alleged disability onset date. (20 C.F.R. 404.1563 and 416.965).

8. The claimant has at least a high school education and is able to communicate in English (20C.F.R.404.1564 and 416.964)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR82-41 and 20CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20C.F.R.404.1560( c), 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 23, 2005, through the date of this decision (20 C.F.R.

404.1520(g) and 416.920(g)).

(T. 17-25).

## IV.  CONTENTION OF PARTIES

**A.**    **Plaintiff contends.**

**1**.    Plaintiff contends that the ALJ's decision is based on an error of law because he failed to properly consider the treating sources' opinions. (See Pl's. Br. Doc. 11, p4).

**2.**    The Plaintiff contends that the ALJ's decision is based on an error of law because he improperly gave significant weight to the state agency reviewing psychologist over the opinions of the treating psychiatrists.(See Pl.'s Br. Doc. 11, p8)

**3**.    The Plaintiff contends that the ALJ's decision is not supported by substantial evidence and he committed an error of law because he failed to properly consider Ms. Hall's credibility.(See Pl.'s Br. Doc. 11, p10)

**B.**    **Commissioner contends**

The Commissioner contends  there is substantial evidence to support the commissioner's residual functional capacity determination and finding of non-disability.  Furthermore, the ALJ correctly applied the law in making this determination.  (Def.'s Br.Doc. 13).

## V.  DISCUSSION

### A.        Standard for Judicial Review of a Decision by the ALJ

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied.  *See* 42 U.S.C. § 405(g).  "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  The phrase "supported by substantial

evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). With these standards in mind, the Court reviews the decision by the ALJ.

### B.    Standard for Disability and Five-Step Evaluation Process

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and

therefore entitled to disability insurance benefits, the Social Security Administration has established

a five-step sequential evaluation process. The five steps are as follows (including Residual

Functional Capacity Assessment prior to Step Four):

Step One:       Determine whether the plaintiff is engaging in substantial gainful
                activity;
Step Two:       Determine whether the plaintiff has a severe impairment;
Step Three:     Determine whether the plaintiff has "listed" impairment;
                * Residual Functional Capacity Assessment *
                (Needs to be Determined Before Proceeding to Step Four)


Step Four:      Compare residual functional capacity assessment to determine whether the
                plaintiff can perform past relevant work;
Step Five:      Consider residual functional capacity assessment, age, education, and
                work experience to determine if the plaintiff can perform any other
                work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process

and coming to a decision, the ALJ makes findings of fact and conclusions of law. In this particular

case there are three issues raised by the Plaintiff.

## C.  DISCUSSION OF CONTENTIONS OF PARTIES

### 1.  Did the ALJ fail to properly consider the treating sources' opinions?

> Courts evaluate and weigh medical opinions pursuant to the
> following non-exclusive list: (1) whether the physician has examined
> the applicant, (2) the treatment relationship between the physician
> and the applicant, (3) the supportability of the physician's opinion,
> (4) the consistency of the opinion with the record, and (5) whether
> the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Courts
> often accord "greater weight to the testimony of a treating physician"
> because the treating physician has necessarily examined the applicant
> and has a treatment relationship with the applicant. The ALJ is not
> required in all cases to give the treating physician's opinion greater
> weight than other evidence; rather, "the ALJ holds [the] discretion to
> give less weight to the testimony of a treating physician in the face
> of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178
> (4th Cir.2001).

*Johnson v. Barnhart*, 434 F.3d 650, 654 & n.5 (4th Cir. 2005)

Plaintiff contends that the record contains "the opinions of three treating sources, all indicating that Ms. Hall was unable to work." (Pls Br. Doc. 11 p 4). These treating sources are David S. Peasak, Nurse Practitioner (T. 269-272); E. Samuel Guy, M.D. (T. 298-300) and Dr. Schaffner (T. 294-297). In reviewing, these opinions, the Court finds that only one of those opinions actual indicates that Ms. Hall was unable to participate in sustained employment and that was Dr. Schaffner. The Court will review each opinion below and the ALJ's treatment of those opinions.

First, David Peasak, NP, does not give a medical source statement in his Routine Abstract Form Mental dated July 30, 2007. He makes the following notations. The Plaintiff's speech is rambling. (T. 270). She has no hallucinations, delusions or homicidal ideations. (T. 270). She has mildly deficient judgement and mild suicidal ideation. (T. 270). Her mood is depressed but her perception is normal and her insight is only mildly deficient. (T. 270). She is moderately deficient in immediate memory, recent memory, concentration, task persistence and pace. (T. 271). She is severely deficient in social functioning.(T. 271) His GAF rating for her is 55-65 and believes psychotherapy and medication should be her treatment plan. (T. 271) Whether the Plaintiff is able to work is not addressed (T. 269-272).

Plaintiff suggests that "The ALJ did not address Mr. Peasak's opinion at all." (Pls Br. Doc. 11 p 5). This is simply incorrect. The ALJ states in his order that "On July 30, 2007, the claimant was noted to have bipolar disorder and a GAF estimate of 55 to 60 (Exhibit 7F/1-4)" (T. 12). Such a GAF rating is indicative of only moderate symptoms or moderate difficulty in school, occupational

or school functioning;[1] in other words, despite her severe deficiency in social functioning, Mr. Peasak found that it had resulted, at most, in moderate symptom or difficulties. The ALJ, in effect, concurred with Mr. Peasak's assessment (Tr. 12-13).

The second treating source is E. Samuel Guy, M.D. Although Dr. Guy does recommend that Plaintiff "drop out of school for now" and that "she apply for disability," there is nothing in his Mental Status Exam on September 8, 2006 that would indicate that he believes she is unable to work. In fact, he states in his report that:

> "In spite of poor sleep, she does not nap during the day. She doesn't feel physically tired but emotionally stressed and thoughts racing. She denies hallucinations, or delusions or paranoia. Speech is goal directed, appropriate, reality based, clear, spontaneous, coherent, a bit fast and loud. No expansiveness noted. She is appropriately dressed and groomed. Appropriate appearance for stated age. No tics, tremors or dystonias. Intellectually felt to be average."

(Dr. Guy, September 8, 2006, T. 299) His GAF rating for her is 45 to 50. (T. 299).

The ALJ considered Dr. Guy's opinion. (T. 11). The ALJ found that:

> "On September 8, 2006, the claimant underwent a psychiatric intake examination and the claimant reported that she had used marijuana on an occasional basis to help her from having a breakdown (Exhibit 7F/30). She was diagnosed with bipolar disorder, mixed state and marijuana abuse with a GAF estimate of 45 to 50 (Exhibit 7F/31). Her mental health provider recommended that the claimant drop out of her classes and apply for disability."

(ALJ order, T.11)

It was clear that Dr. Guys's opinion was not probative opinion evidence that required detailed examination because it never specifically addressed Plaintiff's (in)ability to perform basic work

---

[1] American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorder* 32 (4th ed. 1994).

activities.  <u>See</u> 20 C.F.R. §§ 404.1527(b)(2).  In addition, it is not clear that Dr. Guy's level of

contact with the Plaintiff even rose to that of an on-going treatment relationship such as indicative

of a "treating physician" <u>See</u> 20C.F.r.§404.1527(d)(2).  It was apparent from Plaintiff's United

Summit Center records that Dr. Guy did not see her regularly (T. 269-300, 332-41).

The third treating source listed by the Plaintiff is Dr. Schaffner.  The ALJ determined that

Dr. Schaffner's November 2006 opinion should be accorded less weight than the opinions of Drs.

Clark and Comer (T. 14, 297), who argued that Plaintiff could work. (T. 267, 303).

Dr. Schaffner opines in his *Routine Abstract Form Mental* dated November 13, 2006 that:

> "I believe she is currently unable to participate in sustained
> employment.  There are mood swings with significant irritability, low
> motivation, poor concentration.  When overwhelmed, she engages in
> self-injurious behavior.  She can benefit from a regular routine"

(Dr. Schaffner, November 30, 2006, T. 297).

The ALJ wrote in his opinion that:

> "The undersigned accords less weight to the opinions of the
> claimant's mental health provider at Exhibit 7F.  On November 13,
> 2006, her mental health provider opined that the claimant was
> 'currently unable to participate in sustained employment' citing her
> mood swings with significant irritability, low motivation and poor
> concentration (Exhibit 7F/29).  The mental health provider did not
> indicate what objective clinical observations or test results supported
> the conclusory opinion, or indicate the work-related mental
> limitations the claimant suffered.  Rather the opinion is offered,
> ostensibly, to be dispositive to the issue of disability *sub judice*- an
> issue reserved exclusively to the Commissioner.  The undersigned
> therefore cannot accord the opinion any special significant or weight
> for the purposes of determining disability."

(ALJ order, T. 14)

An ALJ is not required to give the treating physicians opinion greater weight than any other

evidence. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 n.4 (4th cir. 2005). Plaintiff's case could not be decided in reliance on Dr. Schaffner's opinion without some reasonable support for it. <u>See</u> SSR96-2p, *Titles II and XvVI: Giving Controlling Weight to Treating Source Mecial Opinions*, 61 Fed. Reg. 34,490 (1996); <u>see also</u> 20CFR §§404.1527(d)(2)-(4), 416.927(d)(2)-(4). If a physician's opinion is not supported by the clinical evidence or if it is inconsistent with the other substantial evidence, it should be accorded significantly less weight. <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996).

The objective clinical observations that Dr. Schaffner reported did not suggest that Plaintiff could not work (T. 295-96). Dr. Schaffner found that Plaintiff was oriented and her speech, judgement, insight, thought content, and immediate and recent memory were normal (T. 295-96) and her social functioning, task persistence, and concentration were only mildly deficient (T. 296). It was apparent that Dr. Schaffner relied predominately on Plaintiff's subjective complaints. But while Dr. Schaffner reported that Plaintiff complained of poor concentration, for example, Dr. Schaffner concurrently found that based upon her ability to perform serial seven subtractions, her concentration was only mildly deficient (T. 296-97). <u>See generally</u> 20CFR pt. 404, subpt. P, app. 1, §12.00C3 . A conclusory opinion based upon the claimant's subjective complaints is not entitled to particular deference. <u>See</u> <u>Craig</u>, 76 F.3d at 590. And though Dr. Schaffner felt Plaintiff's pace was moderately deficient, the ALJ took this into account by precluding her from doing high production rate, assembly line, and high sales quota work (T. 13, 296). Thus, the lack of relevant medical evidentiary support for Dr. Schaffner's opinion weighed in favor of not giving it great weight. <u>See</u> 20CFR§§404.1527(d)(2)-(4), 416.927(d)(2)-(4).

Furthermore, Dr. Schaffner's opinion was contradicted by the weight of the evidence of record, as the ALJ indicated in his discussions of Plaintiff's RFC <u>See id.</u>, at §§404.1527(d)(2),(4),

416.927(d)(2),(4). This was evidence in the general improvement Plaintiff shown in her GAF. Though Dr. Schaffner had rated Plaintiff's GAF at 50 in November 2006, the ALJ considered that Plaintiff's GAF rating generally improved to the 55 to 60 range with continued treatment (T. 12, 272, 280, 297, 334). In fact, Plaintiff planned to return to school because she was "quite" bored. (T. 14). Therefore, the ALJ appropriately did not give Dr. Schaffner's opinion great weight (T. 14) See id., §§§404.1527(d)(2)-(4), 416.927(d)(2)-(4).

The ALJ did not commit an error of law and his findings were supported by substantial evidence regarding this issue.

**2. Did the ALJ commit an error of law by allegedly improperly giving significant weight to the State Agency Reviewing Psychologist Over the Opinions of the Treating Psychiatrists**

Plaintiff asserts that "Here, the ALJ **ignored** and **rejected** the treating source opinions while relying on the state agency reviewing physician opinions even though the state agency reviewing physician did not review a complete case record.." (*emphasis added;* Pl's Resp. Doc 14 p6). First, it is obvious from the record that the ALJ did not "ignore" or "reject" the treating sources opinions. See Discussion of Contention 1 above. Secondly, The ALJ simply agreed with Drs. Clark and Comer's opinions to the extent their opinions were consistent with the majority of the objective findings in the medical evidence, which showed that Plaintiff's ability to work was not grossly restricted. (T. 14).

Plaintiff cites to SSR 96-6p and <u>Ogden v. Astrue</u>, 597 F. Supp. 2n 626, 649 (N.D. W.Va. 2009) alleging a legal error on the part of the ALJ(Pls Br Doc 11 at 8-9). However, the ALJ's consideration of Dr. Clark's and Dr. Comer's opinions was consistent with SSR 96-6p and <u>Ogden</u>

because the ALJ explained that he agreed with their opinion only to the degree that they were consistent with the majority of the objective findings in the medical evidence (T. 14), consistent with 20CFR §§404.1527(d)(3)-(4), 416.927(d)(3)-(4).  In effect, Plaintiff argues that the ALJ cannot give any weight to a medical or psychological consultant's opinion if evidence is submitted after the consultant reviewed the case, but this ignores the ALJ's legal obligation to consider the consultant's findings as opinion evidence, id at §§404.1527(f)(2)(I), 416.927(f)(2)(I).  In fact, in this case, the additionally submitted evidence corroborates the consultant's opinion.  It is well established that an ALJ may rely on the opinions of a non-examining medical source, even when those opinions contradict the treating physician's opinion, if they are consistent with the record.  See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

The ALJ did not commit an error of law and his decision was supported by substantial evidence on this issue.

**3.      Did the ALJ fail to properly consider Ms. Hall's credibility?.**

The law governing the ALJ's credibility analysis is as follows:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness: First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms...
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, ***the adjudicator must***

*make a finding on the credibility of the individual's statements based on a consideration of the entire case record*. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4)...

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529( c)and § 416.929( c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p (emphasis added).

The Court finds that the ALJ correctly applied the two-step process and considered the factors enumerated in SSR 96-7p, 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility as is discussed in steps 1 and 2 below.

**(Step 1)   Is there a medically-determinable impairment that could reasonably be expected to cause the symptoms alleged?**

Although the ALJ did not find a "listed" impairment, the ALJ did find that the Plaintiff suffered from the following severe impairments: bipolar disorder and depression; and anxiety disorder. ( T. 10).

**(Step 2)   To what extent do these symptoms limit her ability to do basic work activities through evaluation of the intensity, persistence, and limiting effects of the individual symptoms.**

Pursuant to the Commissioner's regulations, allegations of pain and other subjective symptoms must be supported by objective medical evidence.  20C.F.R.§§404.1529, 416.929.  Under the regulations, the ALJ cannot find a claimant disabled based solely on subjective complaints of pain.  20C.F.R. §§404.1528, .1529; 416.928, .929.  Once an ALJ concludes that a medical impairment could reasonably cause the alleged symptoms to exist, he must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This analysis obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he is disabled by it.  20C.F.R.§§ 404.1529(c)(3)(I)-(viii), 416.929(c)(3)(I)-(vii).

The ALJ fully explained his reasoning for finding that the objective medical evidence did not support Plaintiff's subjective complaints (T. 13, 14).

> The claimant is not entirely credible, particularly with regard to her allegations of pain, limitations, and overall disability.  The claimant reported over a series of examinations that she had a relationship with her boyfriend, and that she was able to help his family out with their restaurant.  She was also able to attend college classes part of the time, but withdrew in the Spring of 2007.  She had an increase

in depression following her break up with her boyfriend(Exhibit 11F/1 and 11F/4). While the claimant's symptoms apparently increased following the break-up it is not clear that her increase in symptoms affected her ability to do work-related mental activities to the extent she has alleged, or for the period of time that she has alleged. The claimant has been able to do activities of daily life, care for pets, occasionally drive, and attend support group meetings. After careful consideration fo the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimants statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment.

(ALJ Order, T. 13-14).

The Plaintiff refers only to a small portion of the transcript pages 174-181, which is a Function report filled out by the Plaintiff, for information about the Plaintiff's daily living. However, there are many other examples in the record regarding Plaintiff's daily living. For instance, the ALJ refers to Exhibit (11/F) which in part states that: "Jennifer dropped out of college last year around the time when she would have begun student teaching. She would like to begin a dog care business someday." (T. 333). Dr. Allman notes that Plaintiff enjoys taking care of her animals and scrapbooking. (T. 250). Ms. Cornwell noted that the Plaintiff was "quite bored not working or attending school, and she plans to look into completing her degree."(T. 335). Plaintiff was looking forward to continuing to help her boyfriend's family with their restaurant. (T. 274). Even the function report filled out by the Plaintiff, indicates that she attends church regularly; helps with laundry and cleaning and takes care of her pets. (T. 174-181).

With regard to the ALJ's remarks about the break up of Plaintiff with her boyfriend, the exhibit cited by the ALJ describes as follows: "Brooke's boyfriend ended their relationship of

several years and she misses him very much." (T. 335).

On the issue of credibility, the medical records indicate that Plaintiff was looking forward to continue helping her boyfriends family with their restaurant. (T. 274). However, when the Plaintiff was asked about this statement at the hearing, the Plaintiff indicated that she did not help inside the restaurant at all but just helped her boyfriend think up menus for the restaurant. (T. 65). Later at the hearing, the Plaintiff describes a time when she got into a fight at her boyfriends restaurant. (T. 73). Plaintiff stated she got into "...a physical fight over a bag of food with a customer." (T. 73). The two statements appear contradictory. In addition, Plaintiff testified at the hearing that she had not smoked marijuana since she was committed to Sharp in 2005. (T. 72). However, in the medical records, Plaintiff reported to Dr. Guy in 2006 that she takes marijuana on an occasional basis to help her keep from having a breakdown. (T. 298)

The Plaintiff further admits that she has no physical problems that would effect her ability to work. (T. 71). Plaintiff has a high school diploma and attended Fairmont State College for three and one half years pursuing a degree in Elementary Education. (T. 40-42). Plaintiff indicated that she made mostly A's and a few B's in school and that her overall GPA was a 3.8. (T.72). Dr. Guy, one of Plaintiff's "treating" doctors, assessed Plaintiff's intelligence to be average. (T.299). When Plaintiff was questioned by her attorney during the ALJ hearing as to whether she was capable of performing a job "back in a room doing something by yourself", Plaintiff responded that "Then it comes down to me being able to leave the house and be dependable and be there every day and –or picking up the phone if I can't go in and letting them know ahead of time which I can't always deal with at the time." (T. 75).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

be expected to produce some symptoms and limitations of the general type that Plaintiff alleged, but that her statements were not entirely credible concerning the intensity, persistence and limiting effects of her symptoms (T. 13-14). In so finding, the ALJ considered Plaintiff's treatment history, medication, daily activities, and medical assessments, and provided sufficient reasons for his finding. (T. 8-16). Based on all the evidence, the ALJ concluded that Plaintiff's ability to perform work at all exertional levels was compromised by nonexertional limitations. (T. 15). Based on the testimony of the vocational expert, the ALJ concluded, considering the claimant's age, education, work experience, and residual functional capacity, the Plaintiff is capable of performing work in the national economy. (T. 15).

Plaintiff's allegations of disability cannot be found fully credible unless they are supported by objective medical evidence. The ALJ evaluated Plaintiff's subjective statements in accordance with controlling regulations and adequately explained why Plaintiff's claims about the severity of her pain and symptoms were not credible.

The ALJ did not commit an error of law and his decision was supported by substantial evidence on this issue.

## VI.      RECOMMENDATION AND CONCLUSION

For all the above reasons, the undersigned United States Magistrate Judge finds that the ALJ correctly applied the law and that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform other work in the national economy. The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[12]**, **DENY** Plaintiff's Motion for Summary Judgment **[10]**, and **AFFIRM** the Decision of the Administrative Law Judge.

The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable Robert E. Maxwell. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 3, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE