**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**JENNIFER HALL,**

    Plaintiff,

**v.**                                                                      **Civil Action No. 2:09-CV-122
(BAILEY)**

**MICHAEL J. ASTRUE,
Commissioner of Social
Security,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

<u>I.</u>    <u>Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel [Doc. 15] and the plaintiff's Objections thereto [Doc. 16]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. *See* **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ORDERED ADOPTED**.

II.  Background

On October 14, 2009, the plaintiff filed her Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Pursuant to the Local Rules, this case was referred to the United States Magistrate Judge David J. Joel, for proposed findings of fact and a recommended disposition. On January 8, 2010, and February 5, 2010, the plaintiff and the defendant filed their respective motions for summary judgment.

In support of her motion, the plaintiff asserts three claims of error on the part of the Administrative Law Judge ("ALJ"). In his motion, the defendant responds to each of these claims and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff asserts the ALJ failed to properly consider the treating source opinions of (1) David Peasak, NP; (2) E. Samuel Guy, M.D.; and (3) Liza Schaffner, M.D. In particular, the plaintiff argues that all three opinions indicated that she was unable to work. According to the plaintiff, the ALJ completely failed to explain why he rejected the opinions of Peasak and Guy, and that the ALJ gave legally improper reasons for rejecting Schaffner's opinion. In response, the defendant argues that the ALJ considered all the treating source opinions and gave legally proper reasons for rejecting Schaffner's opinion.

Second, the plaintiff claims the ALJ improperly attributed more weight to the state agency opinions than the treating source opinions. Specifically, the plaintiff argues that the state agency psychologists, H. Hobback Clark, M.D., and Philip E. Comer, Ph.D., were unable to review a complete case record. In response, the defendant argues that the ALJ properly explained that he agreed with the state agency opinions only to the degree that they were consistent with the majority of the objective findings in the medical evidence.

Moreover, the defendant notes that the evidence submitted after the state agency opinions only corroborates their conclusions.

Third, the plaintiff alleges the ALJ conducted an improper assessment of her credibility. In particular, the plaintiff argues that the ALJ selectively cited portions of her records to portray her as not credible. Additionally, the plaintiff argues that the ALJ found she had a wide range of daily activities while improperly ignoring evidence indicating that she was limited in her ability to do these activities. In response, the defendant argues that the ALJ properly discredited the plaintiff, applying the correct standard to the medical evidence of record.

On June 3, 2010, Magistrate Judge Joel rejected all three of the plaintiff's claims of error and recommended that the plaintiff's motion be denied and the defendant's motion be granted. ([Doc. 15] at 23). First, the magistrate judge concluded that the ALJ properly considered the treating source opinions. (Id. at 17). In so concluding, the magistrate judge found that each treating source opinion was considered and given the proper amount of weight. (Id. at 13-17). Second, the magistrate judge concluded that the ALJ properly attributed more weight to the state agency opinions than the treating source opinions. (Id. at 18). Specifically, the magistrate judge found that the ALJ adequately explained that he agreed with the state agency opinions only to the degree that they were consistent with the majority of the objective findings in the medical evidence. (Id. at 17-18). Third, the magistrate judge concluded that the ALJ conducted a proper assessment of the plaintiff's credibility. (Id. at 23). In this regard, the magistrate judge found that the ALJ had correctly applied the two-step analysis of a claimant's credibility and properly concluded that the objective medical evidence did not support the plaintiff's subjective complaints. (Id. at 18-

23).

### III. Applicable Standards

    A. Judicial Review of an ALJ Decision

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. *See* 42. U.S.C. § 405(g). 'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.' **Richard v. Perales**, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' *See* **Perales**, 402 U.S. at 401, 91 S.Ct. at 1427 (citing **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 216 (1938)). Substantial evidence . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance . . .. Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See* **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966); **Snyder v. Ribicoff**, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979). 'This Court does not find facts or try the case *de novo* when reviewing disability determinations.' **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976)." **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

4

B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520.

IV. Discussion

In her Objections [Doc. 16], timely filed on June 17, 2010, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's three claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that one of the ALJ's step-conclusions is not supported by substantial evidence.

**A. ALJ's Consideration of Treating Source Opinions**

In her motion, the plaintiff asserts the ALJ failed to properly consider the treating source opinions. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the

5

ALJ's consideration of the treating source opinions.

### 1. Peasak Opinion

In her Objections, the plaintiff claims the ALJ erred by not adequately considering the Peasak opinion. ([Doc. 16] at 4). More specifically, the plaintiff argues that the ALJ's reference to Peasak's bipolar disorder diagnosis and global assessment of functioning ("GAF") score was an inadequate consideration of Peasak's functional capacity opinion. (Id. at 5). This Court finds, however, that substantial evidence supports the ALJ's finding at step three that the plaintiff's impairments fail to equal one of the listed impairments.

On July 30, 2007, Peasak completed a Routine Abstract Form Mental (the "Form"). In the functional capacity section of the Form, Peasak noted that the plaintiff was moderately deficient in immediate memory, recent memory, concentration, task persistence, and pace, but that she was severely deficient in social functioning. Based upon these observations, Peasak diagnosed the plaintiff as bipolar and rated her GAF between 55 and 60. However, Peasak failed to give a medical source statement, which the Form defines as "a statement, based on [his] findings, of [his] opinion, despite any functional limitations imposed by his/her impairment(s), of [the plaintiff's] ability to perform work-related activities such as understanding and memory, sustained concentration and persistence, social interaction, and adaptation." ([Doc. 8-2] at 75). In other words, Peasak failed to opine regarding how the plaintiff's functional limitations affect her ability to work.

In finding that the plaintiff has severe impairments at step two, including a bipolar disorder, the ALJ stated, "On July 30, 2007, the claimant was noted to have bipolar disorder and a GAF estimate of 55 to 60 (Exhibit 7F/1-4)." ([Doc. 8] at 15). This is the

ALJ's only specific reference to Peasak's notations. The ALJ then concluded that the plaintiff's severe impairments fail to equal one of the listed requirements, finding that all of the plaintiff's functional limitations were moderate. Thus, the ALJ's only finding that conflicts with that of Peasak is the one concerning the plaintiff's social functioning. Peasak rated it severely deficient, whereas the ALJ rated it moderately deficient.

However, even assuming the ALJ disregarded Peasak's rating without explanation, this Court finds that the ALJ's conclusion at step three is still supported by substantial evidence. To equal one of the listed impairments, a claimant's mental impairments must result in at least *two* "marked" functional limitations. (See [Doc. 8] at 15). A marked limitation means that a claimant has a more than moderate functional limitation. (Id.). According to Peasak, the plaintiff was more than moderately limited only in her social functioning. Thus, even if the ALJ adopted Peasak's notations wholesale, which he nearly did, the plaintiff's mental impairments would still fail to equal one of the listed impairments. As such, the Court finds that the ALJ's consideration of the Peasak opinion does not require a finding that the ALJ's conclusion at step three is not supported by substantial evidence.[1]

## 2. Guy Opinion

In her Objections, the plaintiff claims the ALJ erred by not adequately considering the Guy opinion. ([Doc. 16] at 6). More specifically, the plaintiff argues that by finding she could perform full-time competitive work, the ALJ reached a conclusion which contradicted

---

[1] Moreover, the Court notes that the ALJ accounted for the plaintiff's social limitations in his RFC assessment. Specifically, the ALJ stated that the plaintiff "can do no work that requires more than minimal interaction with the public, or more than occasional contact with co-workers and supervisors." ([Doc. 8] at 16).

Guy's opinion without explanation. (Id. at 6-7). This Court finds, however, that substantial evidence supports the ALJ's RFC assessment at step three.

On September 8, 2006, Guy conducted a psychiatric intake examination of the plaintiff. Regarding the plaintiff's mental status, Guy noted the following:

> Depressed, tearful, emotionally liable. Complains of thoughts racing and irritability. Trouble falling asleep and maintaining sleep. In spite of poor sleep, she does not nap during the day. She doesn't feel physically tired but emotionally stressed and thoughts racing. She denies hallucinations, or delusions or paranoia. Speech is goal directed, appropriate, reality based, clear, spontaneous, coherent, a bit fast and loud. No expansiveness noted. She is appropriately dressed and groomed. Appropriate appearance for stated age. No tics, tremors or dystonias. Intellectually felt to be average.

([Doc. 8-3] at 2).

Based upon these notations, Guy diagnosed the plaintiff with a bipolar disorder and marijuana abuse, and estimated her GAF score was between 45 and 50. Guy then recommended that the plaintiff "drop out of school for now" and "apply for disability." (Id.).

In finding that the plaintiff has severe impairments at step two, including a bipolar disorder, the ALJ stated, "On September 8, 2006, the claimant underwent a psychiatric intake examination and the claimant reported that she had used marijuana on an occasional basis to help her from having a breakdown. (Exhibit 7F/30). She was diagnosed with bipolar disorder, mixed state, and marijuana abuse with a GAF estimate of 45 to 50 (Exhibit 7F/31). [Guy] recommended that the claimant drop out of her classes and apply for disability." ([Doc. 8] at 14). This is the ALJ's only specific reference to Guy's notations. The ALJ then concluded that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: . . . she can do no more than low stress work, with no high production rate jobs

8

or assembly-line work, or high sales quotas, such as telemarketing sales; she can do no work that requires more than minimal interaction with the public, or more than occasional contact with co-workers and supervisors; she can do only work that is done in a consistent manner on a day-to-day basis; and she cannot do work that requires travel as part of the job." (Id. at 16).

The Court finds that the ALJ's RFC assessment is supported by substantial evidence. First, the plaintiff "readily concedes that Dr. Guy did not offer a typical functional capacity-type opinion." ([Doc. 16] at 6). In fact, Guy merely noted that the plaintiff is depressed and emotionally stressed, diagnosed her as bipolar, and recommended she drop out of school and apply for disability. Second, the ALJ found that the plaintiff has a bipolar disorder and depression, and even categorized them as severe impairments. Third, it is questionable whether Guy's recommendation to drop out of school and apply for disability is a medical opinion, i.e., a judgment about the nature and severity of the plaintiff's impairments. *See* 20 C.F.R. § 404.1527(a)(2). Even if so, the ALJ properly relied upon the objective evidence of the state agency opinion, e.g., that "the claimant's ability to perform exertional work or non-exertional work requirements are not grossly restricted," to accord less weight to the opinions of the treating source opinions. (See [Doc. 8] at 17). As such, the Court finds that the ALJ's consideration of the Guy opinion does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

### 3. Schaffner Opinion

In her Objections, the plaintiff claims the ALJ erred by relying upon legally improper reasons for rejecting the Schaffner opinion. ([Doc. 16] at 7). More specifically, the plaintiff contends that the ALJ improperly rejected Schaffner's opinion for failure to indicate what

objective evidence supported her opinion, for not specifically listing work-related mental limitations, and for opining on an issue reserved to the Commissioner. This Court finds, however, that substantial evidence supports the ALJ's RFC assessment at step three.

On November 13, 2006, Schaffner completed a Routine Abstract Form Mental (the "Form"). In the functional capacity section of the Form, Schaffner noted that the plaintiff was mildly deficient in social functioning, concentration, and task persistence, but that she was moderately deficient in pace. Schaffner also noted that the plaintiff's immediate and recent memory were normal. Based upon these observations, Schaffner diagnosed the plaintiff with bipolar and anxiety disorders, and estimated her GAF score was 50. Finally, in her medical source statement, Schaffner opined that the plaintiff was then "unable to participate in sustained employment" because of her mood swings, significant irritability, low motivation, and poor concentration. ([Doc. 8-2] at 100).

In his RFC assessment, the ALJ accorded Schaffner's opinion less weight than that of the state agency, which found that "the claimant's ability to perform exertional work or non-exertional work requirements are not grossly restricted . . .." ([Doc. 8] at 17). In explaining this decision, the ALJ stated:

> [Schaffner] did not indicate what objective clinical observations or test results supported [her] conclusory opinion, or indicate the work-related mental limitations the claimant suffered. Rather, the opinion is offered, ostensibly, to be dispositive to the issue of disability *sub judice* – an issue reserved exclusively to the Commissioner. The undersigned cannot accord [Schaffner's] opinion any special significant [sic] or weight for the purposes of determining disability.

(Id.).

Nothing in the ALJ's consideration of Schaffner's opinion gives this Court concern as to whether the ALJ's RFC assessment is supported by substantial evidence. First, the

ALJ stated that Schaffner "did not indicate what objective observations or test results supported [her] conclusory opinion . . .." ([Doc. 8] at 17). Contrary to the argument of the plaintiff, this statement does not show that the ALJ was somehow *uncertain* regarding Schaffner's clinical observations, which may have necessitated that the ALJ recontact Schaffner for a more thorough explanation. Instead, as is clear from the context of his opinion, the ALJ simply found that Schaffner's clinical observations noted in the Form failed to support her conclusion that the plaintiff was "unable to participate in sustained employment." For example, Schaffner did not rate a single functional limitation as severe and only rated the plaintiff's pace as moderate, while the rating the rest as mild.

Similarly, that the ALJ emphasized Schaffner's failure to "indicate the work-related mental limitations the claimant suffered" does not mean he was uncertain and needed further explanation. Instead, the ALJ was clearly referring to the fact that Schaffner again had only rated one functional limitation as moderate and found that the plaintiff's recent and immediate memory were normal.

Finally, the ALJ's statement noting that the issue of disability is one reserved to the Commissioner must be viewed in its context. Undoubtedly, the ALJ was not outright rejecting Schaffner's opinion *solely* because it was one reserved for the Commissioner. Rather, the ALJ simply found that Schaffner's opinion that the plaintiff was disabled had no support in clinical observation, and offering it without adequate support, was an improper attempt to decide the issue of disability which is reserved to the Commissioner.

For these reasons, the Court finds that the ALJ's consideration of the Schaffner opinion does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

### B. ALJ's Consideration of State Agency Opinions

In her motion, the plaintiff asserts the ALJ improperly attributed more weight to the state agency opinions than the treating source opinions. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the state agency opinions.

On April 10, 2007, Clark opined that despite the plaintiff's moderately limited concentration and social interaction, "[s]he could perform work-like activities." ([Doc. 8-2] at 70). On August 13, 2007, Comer opined that the plaintiff has the "mental/emotional capacity for work related activity in a work environment that has minimal travel requirements and that can accommodate some mood liability." ([Doc. 8-3] at 6). In conducting his RFC assessment, the ALJ "considered these opinions and, to the extent that they show that the claimant's ability to perform exertional work or non-exertional work requirements are not grossly restricted, and to the extent that the opinions seem consistent with the majority of the objective findings in the medical evidence, the [ALJ] agree[d] with them." ([Doc. 8] at 17). Moreover, the ALJ immediately proceeded to "accord[] less weight to the opinions of the claimant's [treating source opinions]. (Id.).

In her Objections, the plaintiff claims the ALJ erred in according more weight to the state agency opinions because Clark and Comer had not reviewed a complete case record. ([Doc. 16] at 10). More specifically, the plaintiff emphasizes that the ALJ's October 2008 hearing was over one year after the more recent state agency opinion, during which time the plaintiff continued to receive treatment. (Id. at 11). This Court finds, however, that

12

substantial evidence supports the ALJ's RFC assessment at step three.

First, it is undisputed that an ALJ is required to consider state agency evidence as opinion evidence. 20 C.F.R. 404.1527(f)(2)(I). Thus, the plaintiff cannot argue that the ALJ should not have, at all, considered the opinions of Clark and Comer.

Second, the ALJ here made clear that he agreed with the state agency opinions "*to the extent* that the opinions seem consistent with the majority of the objective findings in the medical evidence . . .." ([Doc. 8] at 17) (emphasis added). *See* **Gordon v. Schweiker**, 725 F.2d 231, 235 (4th Cir. 1984) (an ALJ may rely on the opinions of a non-examining medical source, even when those opinions contradict the treating physician's opinion, if they are consistent with the record).

Third, the evidence submitted after the opinions of Clark and Comer actually provided corroboration. For example, both the state agency consultants and the treating sources agree that the plaintiff suffers from a bipolar disorder and has moderate functional limitations, including social interaction, concentration, and pace. If anything, the subsequent evidence showed some improvement, including an increase in the plaintiff's GAF score, and a desire to return to school. (See [Doc. 8] at 5).

For these reasons, the Court finds that the ALJ's consideration of the state agency opinions, and the weight given those opinions, does not require a finding that the ALJ's RFC assessment at step three is not supported by substantial evidence.

### C. ALJ's Decision to Discredit the Plaintiff's Subjective Complaints

In her motion, the plaintiff alleges the ALJ improperly relied upon her daily activities to discredit her subjective complaints. The magistrate judge rejected this claim. The

13

plaintiff objects to the magistrate judge's conclusion.  For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

On January 27, 2007, Joseph A. Shaver, Ph.D., noted that the plaintiff "cares of pets, prepares simple meals, does laundry and some cleaning, drives and shops." ([Doc. 8-2] at 48).  On March 13, 2007, the plaintiff told Peggy Allman, M.A., that "she would like to return to work, but her physician has advised against working yet nor does he want her to return to college." (Id. at 50).  On May 21, 2007, the plaintiff reported to Cheryl Cornwell, LPC, that she was looking forward to continuing to help her boyfriend's family with their restaurant.  (Id. at 77).

In addressing the plaintiff's credibility, the ALJ reasoned:

> The claimant is not entirely credible, particularly with regard to her allegations of pain, limitations, and overall disability.  The claimant reported over a series of examinations that she had a relationship with her boyfriend, and that she was able to help his family out with their restaurant.  She was also able to attend college classes part of the time, but withdrew in the Spring of 2007.  She had an increase in depression following her break-up with her boyfriend (Exhibit 11F/1 and 11F/4).  While the claimant's symptoms apparently increased following the break-up it is not clear that her increase in symptoms affected her ability to do work-related mental activities to the extent she has alleged, or for the period of time that she has alleged.  The claimant has been able to do activities of daily living, care for pets, occasionally drive, and attend support group meetings.  After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

([Doc. 8] at 16-17).

In her Objections, the plaintiff claims the ALJ "selectively cited to only portions of the available records as support for his negative credibility finding while ignoring other records

14

tending to contradict the ALJ's findings without discussing the contradictory evidence." ([Doc. 16] at 12). More specifically, the plaintiff argues that the ALJ improperly ignored evidence that she had difficulty with various activities of daily living. (Id. at 15). This Court finds, however, that substantial evidence supports the ALJ's credibility determination at step five.

The law governing an ALJ's credibility analysis is as follows:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

*See* SSR 96-7p.

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including a bipolar disorder, depression, and an anxiety disorder, which could reasonably be expected to produce the individual's pain or other symptoms. At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects on her ability to do basic work activities. In so doing, the ALJ relied on the plaintiff's statements regarding her daily living activities, like her care for pets and occasional driving, as well as a statement that she looked forward to helping her boyfriend's family with their restaurant.

The Court is unpersuaded that the ALJ's credibility analysis was the result of selective citation, as the plaintiff argues. Specifically, the plaintiff argues that her Information About Daily Activities contradicts the evidence relied upon by the ALJ. With regard to her care for pets, the plaintiff explains that she shares responsibilities for the pets

with her parents. ([Doc. 11] at 12). As for her occasional driving, the plaintiff states that she can go a week without leaving her home and she drives "when [she is] able." (Id.). Finally, concerning the statement that she looked forward to helping her boyfriend's family with their restaurant, the plaintiff explains that her boyfriend had subsequently ended their relationship. (Id. at 10). The Court finds, however, that none of these explanations contradict the daily activities relied upon by the ALJ to discredit the plaintiff's subjective complaints concerning the intensity of her symptoms. As such, the Court finds that the ALJ's decision to discredit the plaintiff's subjective complaints does not require a finding that the ALJ's decision at step five is not supported by substantial evidence.

IV. Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation **[Doc. 15]** should be, and hereby is, **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 16]** are **OVERRULED**. Therefore, this Court **ORDERS** that the plaintiff's Motion for Summary Judgment **[Doc. 10]** is hereby **DENIED** and the defendant's Motion for Summary Judgment **[Doc. 12]** is hereby **GRANTED**. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** it **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: December 2, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE